Case number 19-4048, Adrienne Hood v. City of Columbus OH at all, argument not to exceed 15 minutes per side. Mr. Sean Walton, you may proceed for the appellant. May it please the court. My name is Sean Walton and I'm here today representing Adrienne Hood as the administrator of the estate of Henry Green V. I reserve four minutes of rebuttal time. Ms. Hood, respectfully ask the court to reverse the decision of the district court in granting summary judgment to defendants in this matter. First, district court erred in this case by improperly resolving genuine disputes of fact and by viewing those facts in a light most favorable to defendants. As a result, the district court was unable to do so. Secondly, the district court, half the district court, viewed the facts in this case in a light most favorable to plaintiffs. Based on the record, based upon numerous witness accounts of what happened, there would have been no other option but to deny defendants motion for summary judgment. This, your honors, this case centers around overwhelming number of voices. At the point of the end of this incident, ten eyewitnesses had observed Henry being shot and killed by officers Behr and Rosen. Of ten voices, unfortunately either disregarded or discredited at the duration when applying the law to the facts of this incident. Let me ask you about the beginning of the interaction. If we find that Green had a gun and shot at the officers at some point, wouldn't the officers be entitled to qualified immunity for their initial shots at him? Your honor, I appreciate that question. To answer your question, if that is the case, then I believe that may be the result. However, the record simply does not reflect that. It is not anyone's view as to whether Henry ever pulled a gun or shot at him. There is an initial encounter at the intersection of 26th and Ontario where the officers, who were in plainclothes and in an unmarked vehicle, state that Henry, as they drove by, Officer Rosen states that Henry pulled a gun and pointed it at their SUV as it drove by. That Henry did not lower that weapon at all at any point until Officer Rosen lost sight of him. Officer Baird did not see that. He did not see Henry point a weapon at all. He claims that he saw Henry begin to pull a gun, but he never saw him- Wasn't there a contemporaneous report by the officer to headquarters or over the initial sighting that said he's got a gun and he's pointing it at us? That's correct in part and it is incorrect in part, your honor. The actual call stated that the suspect pulled a weapon and it was not until two weeks later when the officer first gave a statement after working with an attorney that he then stated that Mr. Green pointed the gun at him. Prior to that, the phone call, the radio call only said he pulled a gun and there's an eyewitness at that intersection, Christian Rutledge, who stated that he was looking up at the time of the encounter once the SUV screeched by them at a higher rate of speed and that he and Mr. Green were worried about the SUV because they didn't know who was in the unmarked vehicle and they testified that there's no way that Henry could have pulled a weapon and put it back in his pants without him seeing. And so it contradicts, it's a disputed fact here whether Henry actually even pulled a gun, let alone pointed it at us. Okay, so but the real question comes at the second meeting. Even, let's put that aside, so I think at the second meeting then it would be the same question. If he had a gun and pulled it and pointed it at them, wouldn't they qualify wouldn't they qualify for qualified immunity for the beginning shots that they responded with? Yes, your honor, that is correct and unfortunately the record does not reflect that and at the second intersection there were actually five eyewitnesses who at that point state that they witnessed the events. There's Christian Rutledge who was also at the first intersection, there's Jamar Jordan who was standing literally just a few feet away from the shooting incident, there's Jerry Alfred who was also a few feet from the incident, there's Erica Hickman and Harold Newsome. They were all surrounding that encounter, they all witnessed it, they said that they did not observe Henry point a weapon at the officers. Four of those witnesses said they never even saw Henry pull a weapon until after he was fired upon and so there's also the fact that the officers at no point identified themselves. All the witnesses stated that they had no idea that these were police officers until after the shooting ended. There's a failure to warn, no identification of the officers and to your point, had Mr. Green actually pulled and pointed that weapon to the officers there would have been some justification but that is a heavily disputed fact by multiple witnesses who state that they did not see that happen and in fact they saw officer Rosen shoot first. They saw him shoot out the driver's side window of the vehicle as he was exiting prior to any warnings and also defendant's expert, their shooting reconstructionist Matthew Nodell, he actually testified in his deposition that if the driver's side window was up at the time which the record reflects based on the officer's believes that it would have been officer Rosen's shot that actually shattered that driver's side blast and so. But there's no dispute is there that Mr. Green fired the weapon, his weapon, a number of times into the police car. Isn't that correct on the record? That is correct, your honor. It was a rented SUV, it was an unmarked SUV so it was not technically a police vehicle but there's again numerous witness accounts that state that he did not fire back until officer Rosen fired upon him and he was moving away towards the sidewalk and several witnesses said that it seemed like he was trying to get away and once he was actually hit by officer Rosen that's when witnesses state that he pulled the handgun from his waistband and that's when he would turn fire and it should be known. This is Judge Barry, the bottom line you're making is you just got a big dispute of facts about what happened here. Yes, your honor, it is, it is, there are like I said, senior eyewitnesses that state by the end of this they observed Henry on the ground being shot and killed. There are four to five witnesses who state that Henry never pulled a weapon and every one of those ten witnesses stated that they believe that the shooting was unjustified and there was no provocation, no reason for the shooting. So yes, your honor, you're correct. There's a huge dispute of facts here and this should have never occurred. You're on a jury trial, right? Yes, your honor, I believe that is what is just here. I believe that the ten eyewitnesses that came forward and gave their accounts deserve a chance to be heard and you know by a jury. Is there a difference or isn't there a difference between those initial shots and the testimony of these witnesses regarding the continuation of the shooting by the officers? Your honor, could you clarify that question? Isn't there, isn't there testimony in the record particularly as to the shots when he was down that you referenced earlier that a number of witnesses claim that there was some time span between the initial shots and the shots that continued once he was either down, down on his knees, some of them say down on the ground, time to walk over and shoot. Is that group of shots, could that be analyzed separately? Yes, your honor, and that's the argument that we've made. Those ten eyewitnesses that I referenced, they all say that Henry was at that point on the ground, no gun in his hand, he was not a threat, the officers continued to fire. One eyewitness stated that he believed that there were seven shots fired, others said four or five, but the testimony and the record is undisputed that this is very clear that these eyewitnesses believe that he was on the ground at that point, not a threat, he was fired upon. It should be noted that defendant officer Baird actually stated that Henry dropped the weapon before falling to the ground, but he also does not know what point he stopped firing or what point Rosa stopped firing, but there are 10 eyewitnesses that state that the officers continued to fire, they stated that it was overkill, and that they believe that it was completely unwarranted and unjustified. Your appellate brief doesn't reference the Monell argument. Is that an argument forfeited? No, your honor, that's based on the fact that the district court did not address that. We briefed it in our memo in opposition of their motion for summary judgment. We feel that we have a very strong Monell claim, but the district court stated that because there was no constitutional violation that they would not give an opinion on the Monell claim, but we do have evidence of a pattern in practice, a ratification, and of inadequate training with regards to plainclothes practices. Okay. Are there further questions? No. Do you have anything else you would like to address? At this point, your honor, I believe I have four minutes left for rebuttal, so I can save it there and continue talking. There's a lot of facts here, so I have a lot to talk about. Well, then, whatever additional time there is, Ms. Navarro can go into his rebuttal. Oh, the time has expired? No. Oh, I'm sorry. I could not see that. Thank you. That might help. I could not see that. All right. Thank you. Then Mr. Phillips. Thank you, your honors, and may it please the court. None of the arguments that you just heard changed the fact that Henry Green almost killed Zach Rosen and Jason Barrett. He fired at least six shots directly at Officer Rosen. Their SUV is still sitting on our impound lot, covered in bullet holes. They survived this by the grace of God. They had every right to defend themselves. And Judge Smith's decision is supported by a mountain of uncontroverted evidence. So if we start at the beginning, we can go to 26th Avenue and explain what happened there and why it's important. The testimony is uncontroverted that Henry Green threatened the officers with a gun at 26th Avenue. Christian Rutledge's testimony does not create a genuine material fact as to whether that occurred. And it's important to put into context where this threat is happening. Our officers were tasked to keep eyes on a house where there was a drive-by shooting the day before. Right after they drive past that house, immediately after, Henry Green walks into the street and starts to lift his shirt, displaying a gun. Both Officer Baer and Officer Rosen then hit the brakes to avoid hitting Mr. Green. Christian Rutledge testified that Henry Green, he considered Henry Green to be at fault for walking out in front of the SUV. And he said, Christian Rutledge said Henry Green did it because he was mad and he was drunk. He was mad because he had just gotten into a fight with a girl at a house two blocks away. So when testimony of Christian Rutledge. Christian Rutledge testified that as this is happening, he's text messaging his girlfriend, Jasmine Nicole, looking down at his phone. And he says, as he's text messaging his girlfriend, he hears Henry Green scream, what the fuck, what the fuck, what the fuck at the SUV. Christian Rutledge says he didn't see that because he's text messaging his girlfriend. And Christian Rutledge says, he says to Henry Green, what the fuck is wrong with you? But Henry Green just keeps saying what the fuck to the SUV. So then it's uncontroverted. The SUV drives to the next street Gerber and turns north. Christian Rutledge's testimony that here's what he said. He said Henry Green wouldn't have been fast enough to pull a gun out, pointed it and put it. He wouldn't have been fast enough to pull a gun out and then put it back before I looked up for my text message. That's what he said. Well, it only takes a split second to pull the gun out, number one. Number two, it's a distinction without a difference. If we go with he didn't pull it out and point it, even though he did. If we go with that, he still threatened the officers with a gun. And that's why they aired that on the audio in real time. And there's no dispute he had a stolen gun in his possession at 26th and at Duxbury. So they went back to take him into custody because he threatened them with a gun, which would have not only been a threat with the gun, it's also a felony because he was illegally carrying it concealed. And plaintiff's own expert witness testified the officers did the right thing to air that happen. And then they also did the right thing to then turn on a Duxbury to try to find Henry Green because they had already aired it. So Mark Cruisers were coming to get eyes on him. Now, when they start driving down Duxbury, that's when they encounter him again. And they knew he had a gun in his waistband and he did because he had threatened them with that gun on 26th. So that's why 26th is important. Excuse me, when you say he had threatened them with it, you mean just by displaying it or actually pointing it? Both officers testified that he pulled the gun from his waistband. Officer Rosen testified that because Officer Rosen is the driver. Officer Rosen says when he looks in his side driver's mirror, he sees Henry Green pointing the gun at the SUV. That's what he aired. But what exactly were his words that were aired on the police radio? I can give you his exact quote. Let me get to the exact quote. I think it was something. It was the call number and then he said he gave the description of Mr. Green's clothing, black shorts, red shirt on one, short hair. He just pulled a 33 on us. A 33 is a Columbus Police Code reference to a gun. He says he just pulled a 33 on us. We're swinging around the block. And that's happening in real time. Well, Counsel, isn't there a disputed fact here pretty clearly from various witnesses about what then happened after all that? Right? There's a lot of contradictory testimony about what happened, but it doesn't create a genuine... It's a fact, Counsel. I mean, isn't this a case that needs to be tried by somebody and resolve, resolving the disputed fact of the case? Your Honor, it's our position there's no genuine issue of material fact. He was threatening the officers with the gun on Duxbury as well before the shooting. If you look at all the testimony, we can break, if you break down each witness's testimony. Isn't there testimony that after he was on the ground, the officers shot him several times of witnesses to that effect? There is testimony to that, Your Honor. Yes. What is your thought about why that's not a disputed fact that ought to be tried? I think it's a Scott versus Harris issue. We have timestamped audio that created the sync video. So we have a real time audio of what's occurring during this incident. We know that 35 seconds after Officer Rosen airs, he pulled the 33 on us, we're swinging around the block, that Officer Baer then airs, shots fired, shots fired. So we have a 35-second window where the officers had to continue to drive on Gerber, turn onto Duxbury. The entire interaction, the entire gunfight had to have occurred. They had to have ended. Officer Baer then had to get back to the cruiser and air the shots were fired. All of that happened in 35 seconds. And what happened here, the vast majority of the testimony is this incident occurred in seconds. Officer Rosen has all of his shots occurring in five seconds. Officer Baer has all of his shots occurring in two seconds. Christian Rutledge testified that all the shots happened, quote, real fast, like a split second. Jamar Jordan says there were no shots that were fired once Henry Green fell to the ground. He says he was shot on his knees. No shots were fired when he was on the ground. It's undisputed that Henry Green fired at least six shots. And some of those shots forensically show they were from lower to higher. So we don't dispute he was shot when he was going to the ground. But our officers stopped shooting when they recognized that a deadly threat had changed into a safe situation. And it's hard in this case. There's case law that warns us from judging the timing of this when we are not the ones who are faced with an armed assailant who is shooting bullets at the officers. And I think of other cases. Judge Strange, I was co-counsel on Steven's record, which is a case that you wrote the dissent on about Jason White with the knife on the ground, which is a tragic case, one of the most tragic cases I've seen in my career. In that case, in your dissent, one of the things you noted was Mr. White was that once Henry Green goes to the ground, there's still a gun right by him on the ground. I thought someone said that as he was falling, he had dropped the weapon, his tennis shoe flew off. And then you've got at least three people who testify that even after that, the officers continued to fire. Maybe we can go through each one. The person who said the tennis shoe came off and then he was shot on the ground is Jerry Alfred. The witness's testimony, the entire narrative has to be looked at. There's case law that says you can't take one line from a witness's testimony and ignore the rest of the narrative. Jerry Alfred also testified that the officer shot after Henry Green raised his gun and pointed it at the officers. That was part of his testimony. So that's the beginning. That's the beginning. So now we're at the spot where he loses the weapon or falls. And so what is Alfred's testimony on that is that the gun flew out of his hand, his shoe flew in the air. Before he hit the ground, the officers shot him two or three more times each after he hit the ground. And here's the problem with Jerry Alfred's testimony. It's always been the problem and both sides have tried to deal with this problem. If you watch his videotaped deposition, Mr. Walton tried to... Here's Mr. Alfred's timeline. He said on Dugsbury, the police pull up and say, you like to play with guns. Jerry Alfred then looks southbound away from the incident for three straight minutes. After three minutes, he looks back, sees Henry Green, point his gun at the officers. A gunfight then ensues that lasts five minutes. So that's eight minutes already. At the end of the gunfight, they keep shooting him for one minute. That's what he testified. When you put it as a whole, it's clearly contradicted by the timestamped audio that everybody would agree that's the actual timing of the incident. And when Mr. Walton tried, I mean, we both tried. He tried to help Mr. Alfred recognize his time problems at the time. He says, okay, why don't you act it out and show me what it is. Once he finally got him to act it out, the three minutes was actually 18 seconds. So he's clearly... Jerry Alfred's testimony is clearly contradicted by the uncontroverted audio timestamps. So we know that's not the timing. It can't be. I guess my problem with that is that you've got a number of where there was a pause and then more shooting. Even defendant Rosen says that there was a momentary lapse when I lost the view of Green, obviously, as he's falling. And then shots continued after that. I'm thinking of Rousseau and Dickerson that talk about the time after a shooting when there's no longer a risk. Why is that a jury question? Because, Your Honor, everything is happening so quickly. A reasonable officer would not have realized the threat had passed when six shots were just fired at the officer. When you look at Officer Rosen's testimony, here's what he said. He took the initial volley of shots at Green, then didn't see Green, and then Green came back around. He heard more gunshots and then shot Green because Green was shooting at him. And all of that happened within five seconds. Officer Baer, at that point, was coming around the front of the car. Mr. Green didn't fall after the first volley of shots. He went around to the front of the car, and he was still shooting at Officer Rosen. That's when Officer Baer shot him. So that's what happened there. Regarding Christian Rutledge, he says everything, including the shots on the ground, happened in a split second. Erica Hickman and Harold Newsom are two other witnesses who said they were shot on the ground. Here's the problem with their testimony. They testified that they saw it and Henry Green never had a gun at all and never shot at all. Well, that can't be true. We have the bullets that are in the SUV that are forensically matched to his gun. The appellant admits that Henry Green shot at the uncontroverted forensic evidence. Jamar Jordan doesn't have any shots occurring on the ground. We're also not talking about Chantelle Anderson. When she talks about the beginning of this, she says she looks out and sees Henry Green pull out the gun and start shooting at Officer Rosen. He shields himself behind the door, and then the officers return fire. So I recognize the difficulty with this testimony regarding the shots on the ground, Your Honor. I recognize it. I recognize it in Stevens-Rucker as well. But what do you do when you have a case where it is clearly contradicted by the forensic evidence and by- I think the concern for me is that clearly it was all happened very quickly. The question being whether some of it happened and then there was a pause and then some more of it happened. But deciding credibility, deciding what view you looked from, deciding whether a witness could have actually seen that or could have seen what happened but not seen the gun, those are just for a jury for that. At least the segmented analysis, it would be the shots on the ground. Because that's a separate issue from what is a reasonable inference a court can make on summary judgment. If you're asking me, do I- On summary judgment, you look at it in the light most favorable to the person who's opposing the motion, not to the person attempting the motion. So why can you not consider the other decisions or the other testimony as something that just needs to be resolved by trial or fact? I see your time's up, but go ahead and answer and conclude. My answer to that is Scott v. Harris says the inference has to be reasonable. It has to be reasonable. Scott v. Harris was a visual video. I know people argue it all the time, but that's a different thing when someone can actually see what occurred, when a judge can see what occurred. What you're telling us is there is no video here. There is evidence. There's evidence of a gun. And then there are people who say, here's what I saw. Why isn't that your classic dispute of material fact? Because a lot of what they said they saw is clearly contradicted by the forensic evidence. For example, Harold Newsom and Erica Hickman, they can't create an issue of material fact because they said he never shot. And even the appellant admits that he shot at least six times. We have his bullets. But they also testified that they had partially obstructed views and that the police kept shooting after Greene was on the ground. So I think we have your arguments. Let's have the rebuttal time, please. Thank you. Your Honor, may it please the court. There's a lot to get through here. We don't have time, but what I can say is that it's clearly not uncontroverted. It's clearly in dispute on every level. When going to the forensic evidence, there is forensic evidence that Henry was actually shot while on the ground. Defendant's own shooting reconstructionist expert stated that there's nothing diagnostic about those two wounds or three wounds that would identify he was on the ground or eliminate he was on the ground. And our forensic pathologist stated that there are several wounds that are indicative of Henry being either prone on the ground or crouched on the ground. Or there are also some wounds that indicate that he was lying flat on the ground at the time of shooting. So forensic evidence actually states that there is evidence that he was shot on the ground. Also, defendant's shooting expert could not identify the shooting path of eight of the bullets. And so, Officer Rosen shot 15 times. Officer Behr shot seven times. And of Officer Rosen's 15 shots, eight of those cannot be identified. Henry was shot eight times. The most substantial of those wounds, Wren's testimony states that it likely came when he was on the ground. I think we're having a little audio. Can you hear? Give us your last statement again. The audio cut out. The forensic evidence clearly states that there's clear evidence that Henry may have been shot on the ground, which corroborates the 10 eyewitnesses that state that he was shot on the ground. Going back to 26th and Ontario, because this is a very critical moment. It is not uncontroverted that Henry pulled a weapon at that intersection. Christian stated in his testimony was actually that once the incident happened with the car, he was out of his home. He did not state that he wouldn't know one way or another. He stated that once this car swerved up on him and him were worried about the car. And at that point he watched the vehicle. They watched it creep to a stop and turn onto Gerber. That is a dispute. And Behr also did not see Henry point the weapon. It should be noted that when they- But he does not dispute that Henry had the weapon, right? Correct. He does not dispute it. But Rutledge did not see it come out at that intersection. He didn't see it come out until after Henry was shot at by Rosen at the next intersection. It should be noted that on that contemporaneous radio call, Rosen first asked Behr to call in the call. He passed the radio back to him, asked him to call in the call. Behr refused to, because he didn't dispute it. That's what he said. He said, I'm comfortable calling it in. That was his deposition testimony. Speaking of the Stevens-Rucker dissent that you had, Your Honor, I believe you noted in it that we cannot simply accept officers' self-serving accounts of what happened. We have to look at circumstantial evidence. And that's in a situation where the decedent- One more question. Does it make any legal difference that these were plainclothes officers and that they placed a call but did not wait for a marked police car to arrive? Absolutely. We briefed that in detail in our motion in opposition, excuse me, memo in opposition. And it's indicative of unreasonableness. What the record states from the chain of command, from all of the training procedures is that the officers were supposed to wait, maintain surveillance, and wait for a marked cruiser to come in and identify themselves. And it's obviously very well-settled case law on that. And the officers did not do that in this case. We thank you both for your arguments. It is a complex case. We will take it with us also. Thank you, Your Honor.